IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL KYLE CRESPIN,

    Plaintiff,

v.                                                                                          No. 22-cv-811-KG-KK

CITY OF ALBUQUERQUE,
CHIEF OF BERNALILLO COUNTY
METROPOLITAN DETENTION CENTER,
LISA MORTON, GARY TRUJILLO, JR.,

    Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court on Paul Kyle Crespin's *pro se* Amended Prisoner Complaint for Violation of Civil Rights, filed November 14, 2022 (Doc. 3) (amended to add and terminate defendants only on 2/22/2023 (Doc. 10) (the "Complaint"). Plaintiff is a pretrial detainee incarcerated in the Bernalillo County Metropolitan Detention Center ("MDC"). Plaintiff claims that the conditions of confinement at MDC violate his rights guaranteed by the First and Eighth Amendments to the United States Constitution. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court finds it must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend.

I.    Background

For the limited purpose of this Memorandum Opinion and Order, the Court assumes that the following allegations are true.

Plaintiff alleges that Defendants have not provided him with religious materials he has requested. (Doc. 3) at 4. Of whom he made the request, for what religious materials is not specified.

He also alleges that he is being subjected to cruel and unusual conditions of confinement because he is not provided sufficient time out of his cell. (Doc. 3) at 4. According to Plaintiff, staff shortages at MDC led to 121 hours of continuous lockdown without open air recreation, phone calls, day room access, access to kiosks, or access to legal materials. (Doc. 3) at 5. Plaintiff has allegedly sought recourse from Defendants (from whom and in what form is not stated) but the issues were not resolved. (Doc. 3) at 6. He also alleges that his personal safety is in jeopardy because MDC officials are not conducting adequate inmate safety and welfare checks. (Doc. 3) at 8.

Based on the foregoing, Plaintiff claims that Defendants have violated his right to be free from cruel and unusual punishment and his right to freely exercise his religion. (Doc. 3) at 3. He seeks $5 million in damages, half of which he would designate for the remediation of MDC's staffing shortage. (Doc. 3) at 8.

II. Analysis

A. Standard of Review

As Plaintiff is proceeding *pro se* in this civil action against a governmental entity, the Complaint must be screened under 28 U.S.C. § 1915A. The Court must dismiss a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Among other things, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is pro se, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state a valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.* It does not mean, however, that the court should "assume the role of [his] advocate[.]" *Id.*

B.   Pleading Standards Governing a Section 1983 Claim

Plaintiff seeks to state claims under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. Section 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A Section 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

C. The Complaint Does Not State a Viable Section 1983 Claim

1. Claims Against the City of Albuquerque

A municipality, including a city may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). For Section 1983 municipal-liability purposes "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision" are considered an "official policy or custom." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). But municipal liability is limited "to action for which the municipality is actually responsible," which is different from the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

Therefore, to state a claim against a city, a plaintiff must allege facts showing that an official policy is the moving force behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference." *Burke v. Regalado*, 935 F.3d 960, 999 (10th Cir. 2019). The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

The allegations in the Complaint do not show the existence of a policy or custom established by the City of Albuquerque that is causally connected to the alleged deprivations of

4

Plaintiff's Constitutional rights. Any claim against this Defendant must therefore be dismissed.

It is possible that Plaintiff's municipal liability claims are aimed at the Bernalillo County Board of Commissioners, which is the municipal entity responsible for MDC. Plaintiff will have the opportunity to amend his complaint and, if he so chooses, to add that entity as a defendant. The same municipal liability pleading standards set forth in this section would govern claims against Bernalillo County Board of Commissioners.

2. Claims Against the Individual Defendants

To state a viable Section 1983 claim against an individual state actor, a plaintiff must show the defendant's conduct violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In other words, the plaintiff must clearly identify "exactly *who* is alleged to have done what to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008). Allegations against "defendants" collectively, without specifying what wrongful conduct is attributable to an individual defendant, do not satisfy this pleading standard and, therefore, do not give rise to viable claims. *Id.*

Plaintiff's Complaint is comprised exclusively of generalized allegations of wrongdoing attributable to "Defendants" as a group. It does not apprise any defendant of the basis of the claims against them individually. The claims against the Chief of Bernalillo County Metropolitan Detention Center, Lisa Morton, and Gary Trujillo, Jr. must therefore be dismissed.

3. The Claims are also not Substantively Viable

a. Cruel and Unusual Conditions of Confinement

Plaintiff claims that he was subjected to cruel and unusual conditions of confinement when he was locked down in his cell for 121 days and deprived of outdoor recreation and facility resources such as phones, kiosks, and legal materials. He also alleges that MDC staff is not

performing adequate inmate welfare checks. He attributes these circumstances to understaffing at MDC. These allegations are not sufficiently developed to support a Constitutional claim.

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Although pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment, the standards governing claims of cruel and unusual punishment are the same in either context. *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 F. App'x 554, 556 (10th Cir. 2001).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must prove, among other things, that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, the plaintiff must satisfy a subjective component. In the municipal liability context, the subjective component is satisfied by showing the municipality had actual or constructive notice that its action or inaction would almost certainly result in a constitutional violation and it consciously disregarded the risk of harm. *Layton v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 512 F. App'x 861, 871 (10th Cir. 2013). For individual liability, a plaintiff may satisfy the objective component by showing that a state actor knew about, but disregarded, a substantial risk of harm.

Here, the Court will assume without deciding that the alleged conditions satisfy the objective component of an Eighth Amendment claim. *See, e.g., Perkins v. Kansas Dep't of Corr.*,

165 F.3d 803, 810 (10th Cir. 1999) ("[T]here can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment[.]"); *Thompson v. Lengerich*, 798 F. App'x 204, 212 (10th Cir. 2019) (holding that prolonged lockdowns and increased danger to inmates resulting from policy of understaffing stated Eighth Amendment claim). But to state a viable claim for cruel and unusual punishment, the plaintiff must plead facts satisfying the subjective component as well. The Complaint is devoid of allegations showing that a municipal policy underlay the staffing shortage or the concomitant lockdowns and safety concerns. *See generally*, *Thompson*, 798 F. App'x at 212 (failing to remedy ongoing constitutional violations may show municipality's deliberate indifference); *Bond v. Oklahoma Cnty. Crim. Just. Auth.*, No. CIV-23-05-D, 2023 WL 2878772, at *4 (W.D. Okla. Apr. 10, 2023) (holding plaintiff stated viable claim by showing municipality maintained custom of understaffing and inadequately supervising jail, was on notice that deficiencies posed significant risks to inmate safety, and consciously disregarded risks). Also absent are allegations showing that any of the individual defendants knew of, but remained deliberately indifferent to, the allegedly unconstitutional conditions.

2. Free Exercise of Religion

In relevant part, the First Amendment to the United States Constitution protects the free exercise of religion. "[A] prison inmate retains [his] First Amendment rights [to the extent they] are not inconsistent with this status as a prisoner or with the legitimate penological objectives of the prison system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, prison regulations and actions of prison officials that impinge on an inmate's First Amendment rights are valid "if [they are] reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (same).

To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must show that a prison regulation substantially burdened sincerely held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218–19 (10th Cir. 2007). This standard may be satisfied by facts showing the government actor (1) prevented participation in conduct motivated by a sincerely held religious belief; (2) placed substantial pressure on an adherent to not engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief; or (3) required participation in an activity prohibited by a sincerely held religious belief. *Khan v. Barela*, 808 F. App'x 602, 614–15 (10th Cir. 2020).

Plaintiff's vague and conclusory allegation that defendants have not provided him with religious materials he requested does not satisfy these pleading standards. *Spearman v. Collins*, 500 F. App'x 742, 744 (10th Cir. 2012) (Claims based on vague and conclusory allegations fail).

III.   Plaintiff May File an Amended Complaint

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

**IT IS ORDERED:**

(1)   Each of the claims set forth in the complaint **(Doc. 3)** are **DISMISSED** without prejudice.

(2)   Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE