IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL KYLE CRESPIN,

    Plaintiff,

v.                                                                                  Civ. No. 22-811 KG/KK

BOARD OF COMMISSIONERS OF THE
COUNTY OF BERNALILLO,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

In this case, Plaintiff Paul Kyle Crespin claims that he was subjected to unconstitutional conditions of confinement while he was a pretrial detainee at the Bernalillo County Metropolitan Detention Center ("MDC").[1] (Doc. 12.) Defendant the Board of County Commissioners for the County of Bernalillo has filed a Motion to Dismiss (Doc. 18) ("Motion"), in which it asks the Court to dismiss Plaintiff's claims with prejudice. By an Order of Reference filed on November 17, 2023, United States District Judge Kenneth J. Gonzales referred this matter to me to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 16.) Having thoroughly reviewed the parties' submissions and the relevant law, I recommend that Defendant's Motion be GRANTED IN PART and DENIED IN PART and that Plaintiff's claims be DISMISSED WITHOUT PREJUDICE.

---

[1] While technically still a pretrial detainee at the MDC, Plaintiff currently resides in the community through the MDC's community custody program. *See* Metropolitan Detention Center Inmate Custody & Release List, https://www.bernco.gov/metropolitan-detention-center/overview/ (last accessed August 1, 2024). I note that Plaintiff's name appears in this database as "Kyle Paul Crespin," and that Plaintiff identifies himself this way in several of his filings in this matter. *See id.*; (Doc. 1 at 1; Doc. 3 at 1; Doc. 4 at 1; Doc. 10 at 1.)

I. **BACKGROUND**

Proceeding *pro se,* Plaintiff filed his original complaint in this matter on October 28, 2022, and a first amended complaint ("FAC") on November 14, 2022. (Docs. 1, 3.) The Court dismissed the FAC on February 2, 2023, on the basis that Plaintiff had failed to make an initial partial payment of his filing fee. (Doc. 6.) However, on February 10, 2023, the Court reopened the case after discovering that Plaintiff had timely paid the filing fee in full. (Docs. 8, 9.) Plaintiff then filed a second amended complaint ("SAC") on February 22, 2023. (Doc. 10.)

On August 15, 2023, the Court entered a Memorandum Opinion and Order pursuant to 28 U.S.C. § 1915A, in which it dismissed the SAC without prejudice for failure to state a cognizable claim. (Doc. 11.) The Court granted Plaintiff leave to file an amended complaint within 30 days. (*Id.*) Plaintiff timely filed his third amended Civil Rights Complaint [Under] 42 U.S.C. § 1983 ("TAC") on September 8, 2023. (Doc. 12.)

In the TAC, Plaintiff asserts claims against Defendant under 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights. (*See generally id.*) In support, Plaintiff makes the following factual allegations, which the Court accepts as true for purposes of Defendant's Motion.[2] In January 2022, a cyberattack compromised state prosecutors' ability to pursue convictions against pretrial detainees at the MDC. (*Id.* at 1.) For an unspecified period of time, the cyberattack also rendered automatic door mechanisms and security cameras at the MDC "unusable" and forced staff to use keys to manually open doors. (*Id.*) From January 2022 through

---

[2] Because Defendant brings its Motion under Federal Rule of Civil Procedure 12(b)(6), I analyze it based on the allegations in the operative complaint, except as otherwise noted. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). I accept as true all well-pled factual allegations and view them in the light most favorable to Plaintiff for purposes of analyzing the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). However, legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal,* 556 U.S. at 678.

September 2023, the MDC was "regularly plagued with spora[d]ic loss of control" of electronic security systems, cameras, lights, and phones. (*Id.* at 2.)

In June 2022, the MDC's warden declared a state of emergency at the facility due to a 51.09 % vacancy rate among corrections officers and a shortage of medical providers. (*Id.*) "Existing circumstances authorize[d] corrections officers to apply deadly force inside the facility." (*Id.*) The public defender's office halted in-person client visits as a safety precaution, and there were "regular[]" lockdowns "for entire shifts or parts of shifts relying on one [corrections officer] to run [two to eight] pods at a time." (*Id.*) By September 2023, the MDC had a 70 % vacancy rate among corrections officers. (*Id.*) Detainees were "exposed to unsafe and unsecure conditions" and the facility was "overcrowded due to the courts['] failing to set bail bonds and ordering preventive holds." (*Id.*)

From September 1 to September 5, 2022, the entire population at the MDC, including Plaintiff, "was locked down for 121 hours straight." (*Id.*) American Corrections Association ("ACA") standards and MDC policy indicate that inmates should not be locked down for more than 72 hours at a time. (*Id.*) Plaintiff submitted a grievance to MDC officials about the extended lockdown, but "[t]he administration did nothing to resolve the problem" except to "respond[] … that security [was] trying to correct the problem." (*Id.*)

The TAC's case caption lists "'BernCo' Board of Commissioners" as the only Defendant in this action. (*Id.* at 1.) However, in the body of the TAC, Plaintiff "names Warden Richardson, Greg and Warden Jones responsible for failing to recruit and retain adequate numbers of staff to safely and securely operate [the MDC] in compliance with [ACA] standards." (*Id.*) Thus, on October 3, 2023, the Court ordered Plaintiff to "identify the individuals against whom he wishes to pursue claims, if any." (Doc. 13 at 2.) In response, Plaintiff filed an Addendum to [the TAC] to

3

Clarify Defendant (Doc. 14) ("Addendum"), in which he strikes his prior statement regarding Wardens Richardson and Jones and clarifies that the Board of County Commissioners for the County of Bernalillo is the "sole suable entity." (*Id.* at 1.) In the Addendum, he also alleges that Wardens Richardson and Jones "are the government servants under master, Board of Commissioners, responsible for failing to recruit and retain adequate numbers of staff to safely and securely operate [the MDC] in compliance with [ACA] standards."[3] (*Id.*) Together, the TAC and the Addendum form the operative complaint in this case.

Defendant filed its Motion to Dismiss on January 9, 2024. (Doc. 18.) In the Motion, Defendant seeks dismissal of the claims asserted in the operative complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) Plaintiff has failed to plead facts necessary to state a Section 1983 claim against a municipal defendant; and, (2) the alleged conditions at the MDC do not amount to cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. (*Id.* at 1-4.) Plaintiff has failed to respond to the Motion despite two extensions of time in which to do so. (Docs. 23, 25.) Nonetheless, "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). I will therefore analyze whether Plaintiff has stated a viable claim for relief in the operative complaint.

---

[3] Plaintiff alleges that ACA standards and MDC policy require one corrections officer for every 70 detainees. (Doc. 12 at 2.) As noted above, he also alleges that the MDC "regularly" relied on one corrections officer to run two to eight "pods" for "entire shifts or parts of shifts." (*Id.*) He does not allege how many detainees are housed in each of the pods in question. (*Id.*)

## II. Legal Standards

**A. Motions to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the required statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (ellipses omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), courts must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In undertaking this analysis, courts consider "the complaint as a whole, along with the documents incorporated by reference into the complaint[,]" and construe all well-pled factual allegations "in the light most favorable to the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). Allegations are "well-pled" when they are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and courts will disregard such statements, looking "only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Courts do not "assume that the [plaintiff] can prove

5

facts that it has not alleged or that the defendants have violated the [law] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Liberal Construction of *Pro Se* Filings

The pleadings of a *pro se* plaintiff are "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Courts "make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks and brackets omitted). Also, a *pro se* plaintiff "whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Hall*, 935 F.2d at 1110.

However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Thus, courts cannot "supply additional factual allegations to round out a [*pro se*] plaintiff's complaint or construct a legal theory on [his] behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Further, the *pro se* plaintiff needs "no special legal training to recount the facts surrounding his alleged injury," and so, as with any other plaintiff, his "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. Finally, *pro se* parties must "follow the same rules of procedure that govern other litigants." *Garrett*, 425 F.3d at 840.

### III. ANALYSIS

**A. Plaintiff has failed to state a viable municipal liability claim under 42 U.S.C. § 1983.**

In its Motion, Defendant first argues that the Court should dismiss Plaintiff's claims against it because there is no *respondeat superior* liability under 42 U.S.C. § 1983, and Plaintiff has not alleged facts necessary to state a Section 1983 claim against a municipal defendant.[4] (Doc. 18 at 2.) Specifically, Defendant argues that Plaintiff has not plausibly alleged "that a policy or practice or custom … caused him to be placed on lockdown, as opposed [to] a decision by an employee of the Detention Center." (*Id*.) As explained below, I agree.

Section 1983 "is a remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To state a claim under the statute, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A municipality or other local governmental body is a "person" within the meaning of the statute. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

However, Section 1983 "rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees." *Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008) (citing *Monell*, 436 U.S. at 690–95). Thus, a plaintiff cannot state a Section 1983 claim against a municipal defendant simply by alleging that its employees violated his constitutional rights. *Id.* Rather, for a

---

[4] The standards governing "municipal" liability in Section 1983 cases apply equally to "other local governmental bodies" such as boards of county commissioners. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

municipal defendant to be liable under Section 1983, "the action that is alleged to be unconstitutional" must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or be taken "pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91 (quotation marks omitted).

Summarizing the complex body of law regarding Section 1983 municipal liability that has developed since *Monell*, the Tenth Circuit observed that an actionable municipal policy or custom can take several forms, including

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation marks and brackets omitted).

Moreover, whatever form of policy or custom is alleged, to state a municipal liability claim under Section 1983,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action

8

was taken with deliberate indifference as to its known or obvious consequences." *Id.* at 407 (quotation marks omitted).

Here, Plaintiff fails to plausibly allege that the acts and omissions he challenges implemented or executed a municipal custom, policy, or practice actionable under Section 1983. Initially, the operative complaint wholly fails to allege the existence of any unconstitutional "formal regulation," "policy statement," "custom or usage with the force of law," or "failure to adequately train or supervise employees." *Bryson*, 627 F.3d at 788.

Further, his allegations fall short of plausibly alleging that the actionable decision of a final policymaker caused his injuries. *Id.* He does allege that Wardens Richardson and Jones "fail[ed] to recruit and retain adequate numbers of staff to safely and securely operate [the MDC] in compliance with [ACA] standards," which contributed to the conditions of confinement he challenges. (Doc. 12 at 1-2; Doc. 14 at 1.) But this allegation is fatally vague and conclusory in that it fails to identify any specific decisions these wardens made or specific acts they took or failed to take to recruit and retain staff. As such, it is impossible to assess whether they had final policymaking authority with respect to any relevant decisions, acts, or omissions, and whether these decisions, acts, or omissions caused the challenged understaffing.[5]

Moreover, even if the Court were to assume Plaintiff has adequately alleged that (1) Wardens Richardson and Jones had final policymaking authority over pertinent recruitment and retention decisions, *and* (2) these decisions were the moving force behind his injuries, Plaintiff has still failed to state a municipal liability claim because he has not alleged any facts to support the inference that the wardens' conduct was facially unlawful or that they acted with the requisite

---

[5] For example, it seems probable that finances affected staff recruitment and retention at the MDC, and that MDC wardens may or may not have had final policymaking authority over relevant financial decisions.

degree of culpability, *i.e.*, deliberate indifference. *Brown*, 520 U.S. at 407. For purposes of Section 1983 municipal liability, the "deliberate indifference" standard is satisfied "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). But Plaintiff's allegations do not plausibly support the inference that Warden Richardson, Warden Jones, or any other final policymaker had actual or constructive notice that his acts and failures to act were substantially certain to result in a constitutional violation, and consciously or deliberately chose to disregard the risk of harm.[6]

In sum, Plaintiff's allegations "encompass a wide swath of conduct, much of it innocent," and do not "nudge[]" his Section 1983 municipal liability claims "across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). Because Plaintiff fails to allege sufficient facts to state a Section 1983 municipal liability claim against Defendant, I recommend that the Court dismiss the claims asserted in the TAC and Addendum.

### B. Plaintiff has failed to allege conditions of confinement amounting to cruel and unusual punishment.

Defendant also argues that the Court should dismiss Plaintiff's claims against it because he has failed to plausibly allege that the conditions of his confinement amounted to cruel and unusual punishment in violation of his constitutional rights. (Doc. 18 at 3-4.) As explained below, I agree.

"[A] prison official violates the Eighth Amendment" in prison-conditions cases "only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the "prison

---

[6] On the contrary, some of Plaintiff's allegations suggest that MDC officials took affirmative steps to try to mitigate risks to inmate health and safety in the face of emergent circumstances outside of their control, including a cyberattack and judicial decisions to detain more criminal defendants. (*See generally* Doc. 12.)

official's act or omission must result in the denial of the minimal civilized measure of life's necessities," *id.* (quotation marks omitted), such as "adequate food, clothing, shelter, sanitation, medical care, [or] reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). And second, the "prison official must have a sufficiently culpable state of mind," which in prison-conditions cases "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation marks omitted). These Eighth Amendment standards apply to pretrial detainees via the Fourteenth Amendment's Due Process Clause. *Strain v. Regaldo*, 977 F.3d 984, 989 (10th Cir. 2020); *Honeycutt v. Ringgold*, 399 F. App'x 325, 327 (10th Cir. 2010); *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 F. App'x 554, 556 (10th Cir. 2001).[7]

Here, Plaintiff alleges that he was subjected to cruel and unusual punishment at the MDC because he experienced "regular[]" lockdowns, including one that lasted for five days.[8] (Doc. 12 at 2.) In some circumstances, extended periods of lockdown can violate the Eighth Amendment. *See, e.g., Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 806 & n.4, 810 (10th Cir. 1999) (holding that plaintiff stated Eighth Amendment claim by alleging that he was "denied all exercise outside his cell" for over a year); *Thompson v. Lengerich*, 798 F. App'x 204, 208, 212 (10th Cir. 2019) (holding that plaintiff stated Eighth Amendment claim by alleging multiple "multi-day" lockdowns in inadequate cell space, including one lockdown lasting 11 days, as well as increased danger to inmates from delayed staff response to fights).

---

[7] Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

[8] Plaintiff also alleges that the MDC was unsafe due to staff shortages and overcrowding. (Doc. 12 at 1-2.) However, in the operative complaint, Plaintiff has failed to provide enough detail to plausibly allege that his constitutional right to reasonably safe conditions of confinement was violated, and he has therefore failed to state a claim with respect to these allegations. *See Iqbal*, 556 U.S. at 678.

Nonetheless, prison conditions "may be restrictive and even harsh" without violating the Eighth Amendment, *Barney*, 143 F.3d at 1311, and restrictions on the time an inmate spends outside his cell do not invariably violate the Constitution. *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). In addition,

> [a]n important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. [For example], a filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months.

*Barney*, 143 F.3d at 1311–12 (quotation marks omitted).

It is certainly reasonable to infer that the five-day lockdown Plaintiff challenges was restrictive, though I note that the operative complaint provides no details about the actual conditions of confinement he experienced during that time.[9] However, the relatively brief and isolated nature of the multi-day lockdown weighs against finding that it could rise to the level of an Eighth Amendment violation. *See Barney* 143 F.3d at 1311–12; (Doc. 12 at 2.) Moreover, the Tenth Circuit has found that inmates who experienced conditions akin to a five-day lockdown did not suffer cruel and unusual punishment in violation of the Eighth Amendment. *See Bailey*, 828 F.2d at 653 (finding no cruel and unusual punishment where inmate was allowed one hour of outdoor exercise per week); *Ajaj v. United States*, 293 F. App'x 575, 582–84 (10th Cir. 2008) (finding that conditions including "lock-down for 23 hours per day" and "limited ability to exercise outdoors" did not amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where prisoner was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days").

---

[9] For example, Plaintiff does not indicate whether he was housed alone or with others, whether he had enough room to exercise, and whether he was provided with the means to maintain his personal hygiene.

Thus, by itself, the five-day lockdown is not "objectively, sufficiently serious" to constitute a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quotation marks omitted).

Further, while the other 'regular' lockdowns alleged in the TAC could, by themselves or together with the five-day lockdown, amount to cruel and unusual punishment depending on their nature, duration, and frequency, the TAC does not provide enough factual detail about them to allow the Court to draw that inference. *Compare, e.g., Thompson*, 798 F. App'x at 208, 212, *with Hill*, 75 F. App'x at 721; (*see generally* Doc. 12.) Therefore, Plaintiff's allegations regarding these lockdowns also fail to describe conditions that rise to the level of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The Court should dismiss the claims in Plaintiff's TAC and Addendum because he has failed to plausibly allege a violation of his constitutional rights. *See Iqbal*, 556 U.S. at 678; *West*, 487 U.S. at 48.

### C. The Court should dismiss Plaintiff's claims without prejudice.

In its Motion, Defendant asks the Court to dismiss Plaintiff's claims with prejudice. (Doc. 18 at 4.) However, *pro se* plaintiffs should generally be given a reasonable opportunity to remedy defects in their pleadings unless amendment would obviously be futile. *Hall*, 935 F.2d at 1109-10; *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Here, it is not obvious that it would be futile for Plaintiff to seek leave to amend to remedy the defects I have identified. As such, the Court should dismiss the claims in Plaintiff's TAC and Addendum without prejudice to his ability to file a properly supported motion to amend his pleadings.

### IV. CONCLUSION

For the foregoing reasons, I recommend that Defendant's Motion (Doc. 18) be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that the Court grant Defendant's

13

request for dismissal of the claims asserted in Plaintiff's TAC (Doc. 12) and Addendum (Doc. 14), but deny Defendant's request that the dismissal be with prejudice. I further recommend that the claims asserted in Plaintiff's TAC and Addendum be DISMISSED WITHOUT PREJUDICE and that Plaintiff be allowed to file a motion for leave to amend his pleadings within thirty days of dismissal.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**